UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HOLMES WEDDLE & BARCOTT P.C., et al.,<br><br>Defendants. | CASE NO. C13-0926JLR<br><br>ORDER ON MOTION TO STAY PROCEEDINGS |

## I.  INTRODUCTION

Before the court is Defendant Holmes Weddle & Barcott, P.C.'s ("Holmes Weddle") motion to stay proceedings. (Mot. (Dkt. # 17).) This is an insurance coverage dispute. The defendant, Holmes Weddle, is a law firm. The plaintiff, Federal Insurance Company ("Federal") is Holmes Weddle's malpractice insurer. Holmes Weddle is being sued for legal malpractice in a separate action in state court and has made a claim for coverage with Federal. Federal asserts that there is no coverage and seeks a declaratory

ORDER- 1

judgment that it has no duty to defend or indemnify Holmes Weddle. In response, Holmes Weddle argues that the court must stay this coverage action because it is impossible to make a coverage determination without finding facts that would prejudice Holmes Weddle in the ongoing malpractice action. For the reasons explained below, the court agrees in part and disagrees in part, DEFERS RULING on the motion to stay, and ORDERS summary judgment briefing to proceed as described below.

## II. BACKGROUND

There are three different lawsuits involved in this case. The first of these is Dana Clausen v. Icicle Seafoods, Inc. ("Icicle"), which took place in King County Superior Court. (*See* Am. Compl. (Dkt. # 11) ¶ 9.) In that case, Mr. Clausen, a seaman, sued Icicle in 2008 after he was injured on a boat owned by Icicle. (*Id.*) Icicle retained Holmes Weddle to defend that action. (*Id.* ¶ 10.) During discovery, Holmes Weddle produced an Icicle claim file; during trial, the parties realized the claim file was missing a critical document. (*Id.* ¶¶ 11-13.) The case was tried to a jury, and the jury awarded Mr. Clausen $453,100.00 in compensatory damages and $1.3 million in punitive damages. (*Id.* ¶ 14.) After trial, the court sanctioned Holmes Weddle $5,000.00 and Icicle $10,000 for discovery violations stemming from the incomplete claim file, finding that Holmes Weddle and Icicle had "recklessly certified" that the claim file was complete when in fact it was not. (*Id.* ¶¶ 17-19.) The court also awarded Mr. Clausen $387,558.00 in attorney's fees and $40,547.57 in costs. (*Id.* Ex. H ¶ 5.24.) As a result of these events, the Washington State Bar Association opened a grievance proceeding against Mark Sanford, the Holmes Weddle attorney assigned to the Clausen matter; Mr. Sanford eventually

stipulated to a reprimand for his reckless certification of the incomplete claim file. (*Id.* ¶¶ 20-23.)

The second lawsuit involved in this case flowed directly from the first. In the second lawsuit, Icicle sued Holmes Weddle for legal malpractice in the Clausen action. (*Id.* ¶ 41.) This legal malpractice case is currently pending in King County Superior Court. (*See* Mot. at 5.) In the malpractice action, Icicle alleges that Mr. Sanford committed legal malpractice (for which Holmes Weddle would be liable) by failing to provide the entire claim file in discovery, by failing to warn Icicle about the risk of a punitive damages award, and by failing to settle the case, among other allegations. (Am. Compl. Ex. H ¶ 6.3.) After Icicle filed the malpractice action, Holmes Weddle gave notice of the action to Federal. (*Id.* ¶ 47.) Federal agreed to defend Holmes Weddle in the malpractice action subject to a reservation of rights, including the right to file an action for declaratory relief with respect to coverage. (*Id.* ¶ 48.) Federal also obtained from Holmes Weddle an agreement to indemnify Federal for any defense costs in the malpractice action in the event a court of law determines that Icicle's claim is not a covered loss under Holmes Weddle's malpractice policy. (*Id.* ¶ 49.)

The third lawsuit, this coverage action, followed not long after. In this case, Federal seeks a declaratory judgment that the malpractice action does not involve a covered loss under Holmes Weddle's policy. (*Id.* ¶ 58.) Holmes Weddle filed this motion to stay on August 13, 2013, and Federal filed a motion for summary judgment three weeks later. (*See* Dkt.) The court temporarily stayed all pending deadlines in the case at the parties' request (9/26/13 Stip. (Dkt. # 33)), including the briefing deadlines on

ORDER- 3

Federal's motion for summary judgment (10/30/13 Stip. (Dkt. # 37)). On October 16, the court heard oral argument on this motion to stay. (10/16/13 Min. Entry (Dkt. # 35).)

### III.   ANALYSIS

**A.   Standard on a Motion to Stay**

A district court has discretionary power to stay proceedings before it. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3rd Cir. 1983) (holding that the power to stay proceedings comes from the power of every court to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand). Economy of time and effort is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

When considering a motion to stay, the court weighs a series of competing interests: (1) the possible damage that may result from the granting of the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55); *see also Lockyer*, 398 F.3d at 1109. As the Ninth Circuit has noted, "*Landis* cautions that 'if there is even a fair possibility that the stay . . . will work damage to some one else,' the

party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255).

**B.     The Court Cannot Determine Yet If a Stay is Necessary**

The parties disagree about whether a stay is necessary. Holmes Weddle argues that a stay is proper because Holmes Weddle would be prejudiced in the malpractice action by findings the court may be required to make in this coverage action. (Mot. at 5, 14-15.) Holmes Weddle argues that the two actions "are too interrelated to justly, efficiently and properly proceed in parallel." (*Id.* at 5.) Federal disagrees. (*See* Resp. (Dkt. # 25).) Federal argues that the court can resolve this case on summary judgment without deciding any issues that would materially affect the malpractice action. (*Id.* at 10-12.) Federal asserts that the case "can and should be decided based entirely on undisputed and admitted facts . . . ." (*Id.* at 10.)

Both parties are correct to an extent. Holmes Weddle is correct that it would be improper to proceed with this case if doing so would prejudice its defense in the malpractice action. *See, e.g.*, *Oregon Mut. Ins. Co. v. Ham & Rye, LLC*, No. C10-579RJB, 2010 WL 2787852, at *4 (W.D. Wash. July 14, 2010); *Mut. Of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 10 (Wash. 2007) ("While defending under a reservation of rights, an insurer acts in bad faith if it pursues a declaratory judgment that it has no duty to defend and that 'action might prejudice the insured's tort defense.'") (quoting THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 14.2, at 14-4 (2d ed. 2006)). In particular, Holmes Weddle is correct that there are numerous facts that the court might be required to find in this action that could prejudice Holmes Weddle in the

malpractice action. (*See* Mot. at 14.)  For example, it would be improper for the court to make findings that any particular conduct by Mr. Sanford or Holmes Weddle caused harm in the Clausen case or caused a malpractice action to be filed (or that a malpractice claim is based on or arises from that conduct). (*See id.*)  Likewise, it would be improper for the court to attempt to apportion causation for the malpractice claim between different alleged acts by Mr. Sanford (i.e., discovery violations versus failure to advise about the risk of punitive damages). (*See id.*)  These determinations could infringe on the jury's role in the malpractice action and could therefore cause prejudice to Holmes Weddle. *See, e.g.*, *Oregon Mut.*, 2010 WL 2787852, at *4.  It could also prejudice Holmes Weddle to require it to produce discovery or summary judgment evidence in a manner that could create a disadvantage in the malpractice action. (*See* Reply (Dkt. # 28) at 3.)

On the other hand, Federal is correct that it may be possible to resolve this case without prejudicing Holmes Weddle in any way. (*See* Resp. at 10-12.)  It may be that all that is needed to decide this coverage action is to apply settled contract and insurance law to a set of admitted and undisputed facts. (*See id.* at 10.)  Indeed, one unique aspect of this case is that Federal has already filed a motion for summary judgment, and the court can simply examine that motion to determine whether it is possible to resolve this case without causing prejudice to Holmes Weddle. (*See* SJ Mot. (Dkt. # 26).)  In its motion, Federal raises several arguments that could potentially resolve the question of coverage without requiring the court to find facts of consequence to the malpractice action. (*See id.*)  For example, Federal's argument with respect to "Related Claims" would require the court to examine only the proximity of the relationship between the post-trial sanctions

motion and Icicle's legal malpractice claim. (*See id.* at 12-14) This inquiry does not implicate questions of causation, it only requires the court to compare two claims to determine whether they are "related" as a matter of contract and insurance law. (*See id.*) Similarly, Federal's argument with respect to the "Prior Knowledge and Application Exclusion" would require the court to examine only whether Holmes Weddle knew about facts prior to January 2012 that "might reasonably be expected to give rise to a claim." (*Id.* at 15-16.) This limited inquiry would not prejudice Holmes Weddle in the legal malpractice action. *See Carolina Cas. Ins. Co. v. Ott*, No. C09-5540 RJB, 2010 WL 1286821, at *5 (Mar. 26, 2010) (reaching the same conclusion for a similar clause).

Given this state of affairs, the court will apply a pragmatic approach that seeks to balance the competing interests at play. Accordingly, the court DEFERS RULING on the motion to stay and ORDERS summary judgment briefing to proceed, but only on three issues: (1) the "Related Claims" issue (SJ Mot. at 12-14); (2) the "Prior Knowledge and Application Exclusion" (*id.* at 15-16); and (3) Federal's right to reimbursement (*id.* at 16-17). The court will expect Holmes Weddle to point out in a very specific manner if and where it believes resolution of these issues will require findings that would cause prejudice to its defense in the malpractice action.[1] Holmes Weddle may file a cross motion for summary judgment if it wishes, but the court will expect Holmes Weddle to safeguard its own interests by raising only issues and arguments that will not cause

---

[1] In addition, in the event that the court inadvertently makes conclusions that would prejudice Holmes Weddle in the malpractice action, the court will entertain a motion for reconsideration.

ORDER- 7

prejudice in the malpractice action.[2]  If it is possible to resolve the case on these motions without causing prejudice to Holmes Weddle, the court will do so.  If it proves impossible, the case will be stayed.  In the meantime, the temporary stay on discovery and other pending deadlines will remain in effect.  (*See* 9/26/13 Stip.)

## IV.  CONCLUSION

As explained above, the court DEFERS RULING on the motion to stay, RENOTES the motion for January 3, 2014, and ORDERS summary judgment briefing to proceed according to the description above and the parties' stipulated schedule (*see* 10/30/13 Stip.).  The summary judgment motions are also noted for consideration on January 3, 2014.[3]

Dated this 14th day of November, 2013.

JAMES L. ROBART
United States District Judge

---

[2] If Holmes Weddle does file such a motion, this will not limit its ability to file another summary judgment motion at a later date raising arguments omitted for fear of prejudice in the malpractice action.

[3] This is one week longer than the parties requested (*see* Dkt. # 37).  This additional week is out of consideration for the fact that various briefing deadlines would otherwise intrude on the winter holidays.  The parties are welcome to stipulate to a different noting date or briefing schedule if they so choose.