UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HOLMES WEDDLE & BARCOTT PC, et al.,<br><br>　　　　　　Defendants. | CASE NO. C13-0926JLR<br><br>ORDER GRANTING MOTION TO STAY PROCEEDINGS |

## I.　INTRODUCTION

Before the court are Defendant Holmes Weddle & Barcott P.C.'s ("Holmes Weddle") motion to stay proceedings (Mot. to Stay (Dkt. # 17)) and Plaintiff Federal Insurance Company's ("Federal") motion for summary judgment (MSJ (Dkt. # 26)). This is an insurance coverage dispute. The defendant, Holmes Weddle, is a law firm. The plaintiff, Federal Insurance Company ("Federal") is Holmes Weddle's malpractice insurer. Holmes Weddle is being sued for legal malpractice in a separate action in state

court and has made a claim for coverage with Federal. Federal asserts that there is no coverage and seeks a declaratory judgment that it has no duty to defend or indemnify Holmes Weddle. In response, Holmes Weddle argues that the court must stay this coverage action because it is impossible to make a coverage determination without finding facts that would prejudice Holmes Weddle in the ongoing malpractice action.

The court agrees with Holmes Weddle and GRANTS the motion to stay. Previously, the court deferred ruling on the stay request until after briefing on Federal's motion for summary judgment was complete. (11/14/13 Order (Dkt. # 38).) The court reasoned that summary judgment briefing would help determine whether the case could be resolved without finding facts that would cause prejudice to Holmes Weddle in the malpractice action. (*See id.* at 5-6.) That briefing has now arrived, and the court has reviewed it. (*See* MSJ; Resp. (Dkt. # 43); Reply (Dkt. # 49).) The briefing has substantially clarified the issues in the case, and it is now evident that the court cannot rule on Federal's motion for summary judgment without causing prejudice to Holmes Weddle's malpractice defense. Accordingly, the court GRANTS the motion to stay and STRIKES the pending summary judgment motion without prejudice to re-raising the arguments contained therein after any threat of prejudice has subsided.

## II. BACKGROUND

There are three different lawsuits involved in this case. The first of these is Dana Clausen v. Icicle Seafoods, Inc. ("Icicle"), which took place in King County Superior Court. (*See* Am. Compl. (Dkt. # 11) ¶ 9.) In that case, Mr. Clausen, a seaman, sued Icicle in 2008 after he was injured on a boat owned by Icicle. (*Id.*) Icicle retained

Holmes Weddle to defend that action. (*Id.* ¶ 10.) During discovery, Holmes Weddle produced an Icicle claim file; during trial, the parties realized the claim file was missing a critical document. (*Id.* ¶¶ 11-13.) The case was tried to a jury, and the jury awarded Mr. Clausen $453,100.00 in compensatory damages and $1.3 million in punitive damages. (*Id.* ¶ 14.) After trial, the court sanctioned Holmes Weddle $5,000.00 and Icicle $10,000 for discovery violations stemming from the incomplete claim file, finding that Holmes Weddle and Icicle had "recklessly certified" that the claim file was complete when in fact it was not. (*Id.* ¶¶ 17-19.) The court also awarded Mr. Clausen $387,558.00 in attorney's fees and $40,547.57 in costs. (*Id.* Ex. H ¶ 5.24.) As a result of these events, the Washington State Bar Association opened a grievance proceeding against Mark Sanford, the Holmes Weddle attorney assigned to the Clausen matter; Mr. Sanford eventually stipulated to a reprimand for his reckless certification of the incomplete claim file. (*Id.* ¶¶ 20-23.)

The second lawsuit involved in this case flowed directly from the first. In the second lawsuit, Icicle sued Holmes Weddle for legal malpractice in the Clausen action. (*Id.* ¶ 41.) This legal malpractice case is currently pending in King County Superior Court. (*See* Mot. to Stay at 5.) In the malpractice action, Icicle alleges that Mr. Sanford committed legal malpractice (for which Holmes Weddle would be liable) by failing to provide the entire claim file in discovery, by failing to warn Icicle about the risk of a punitive damages award, and by failing to settle the case, among other allegations. (Am. Compl. Ex. H ¶ 6.3.) After Icicle filed the malpractice action, Holmes Weddle gave notice of the action to Federal. (*Id.* ¶ 47.) Federal agreed to defend Holmes Weddle in

the malpractice action subject to a reservation of rights, including the right to file an action for declaratory relief with respect to coverage. (*Id.* ¶ 48.) Federal also obtained from Holmes Weddle an agreement to indemnify Federal for any defense costs in the malpractice action in the event a court of law determines that Icicle's claim is not a covered loss under Holmes Weddle's malpractice policy. (*Id.* ¶ 49.)

The third lawsuit, this coverage action, followed not long after. In this case, Federal seeks a declaratory judgment that the malpractice action does not involve a covered loss under Holmes Weddle's policy. (*Id.* ¶ 58.) Holmes Weddle filed this motion to stay on August 13, 2013, and Federal filed a motion for summary judgment three weeks later. (*See* Dkt.) The court temporarily stayed all pending deadlines in the case at the parties' request (9/26/13 Stip. (Dkt. # 33)), including the briefing deadlines on Federal's motion for summary judgment (10/30/13 Stip. (Dkt. # 37)). On October 16, the court heard oral argument on this motion to stay. (10/16/13 Min. Entry (Dkt. # 35).) Following argument, the court issued an order indicating that briefing should proceed on three of the issues raised in Federal's summary judgment motion. (11/14/13 Order at 7-8.) The court opined that "[i]t may be that all that is needed to decide this coverage action is to apply settled contract and insurance law to a set of admitted and undisputed facts." (*Id.* at 6.) Ever hopeful of resolving the case, the court asked for the parties' assistance in sharpening the issues with the goal of settling their dispute without undue delay. (*See id.* at 6-8.) However, the best laid plans of judges often go awry, *cf. Midwest Indep. Transmission Sys. Operator, Inc. v. F.E.R.C.*, 388 F.3d 903, 913 (D.C. Cir. 2004) (best laid plans of federal agencies often go awry); *In re Young*, 66 F.3d 376, 377 (1st

Cir. 1995) (best laid plans of creditors and debtors often go awry) (citing Robert Burns, *To a Mouse* (1785)); *Disabled in Action of Penn. v. Se. Penn. Transp. Auth.*, 539 F.3d 199, 212 n.14 (3d Cir. 2008) (it is "axiomatic" that the best laid plans often go awry), and that has proven true in this case. For the reasons explained below, the court is unable to rule on Federal's motion for summary judgment and, instead, GRANTS Holmes Weddle's motion to stay.

### III. ANALYSIS

**A. Standard on a Motion to Stay**

A district court has discretionary power to stay proceedings before it. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3rd Cir. 1983) (holding that the power to stay proceedings comes from the power of every court to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand). Economy of time and effort is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

When considering a motion to stay, the court weighs a series of competing interests: (1) the possible damage that may result from the granting of the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of

issues, proof, and questions of law that could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55); *see also Lockyer*, 398 F.3d at 1109. As the Ninth Circuit has noted, "*Landis* cautions that 'if there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255).

**B.     The Three Factors**

    1. <u>Possible damage from the granting of a stay</u>

It is possible that Federal will be damaged by a stay. "[A]n insurer may be prejudiced by having to pay defense costs in a case where there may be no duty to defend if the stay is granted." *See Cont'l Cas. Co. v. Global Allies, LLC*, No. 2:11-cv-03237-MCE-KJN, 2012 WL 5289315, at *4 (E.D. Cal. October 24, 2012); *see also Or. Mut. Ins. Co. v. Ham & Rye, LLC*, No. C10-579RJB, 2010 WL 2787852, at *4 (W.D. Wash. July 14, 2010) (insurer has an "interest" in not continuing to represent insured if no defense is owed). That said, there is a lower risk of damage here than in an ordinary case of this kind. Here, Federal has an indemnification clause under which it can attempt to recoup expenses from Holmes Weddle in the event that a court eventually declares there is no coverage. (*See* MSJ at 16-17.) And while the court takes no position on the question of whether this indemnification agreement will ultimately be enforceable (an issue the parties contest), the agreement's existence lessens the likelihood that Federal will be damaged by a stay.

### 2. Hardship or inequity in being required to go forward

Moreover, any possible damage to Federal is outweighed by the hardship or inequity inherent in allowing the case to move forward. There are numerous reasons why an insured might be prejudiced by being required to go forward with a coverage action while the underlying liability action is ongoing. *See, e.g.*, *Allied Prop. and Cas. Ins. Co. v. Roberts*, No. 2:11-cv-00740-MCE-KJN, 2013 WL 5230259, at *3 (E.D. Cal. September 16, 2013). Three concerns are particularly salient in the case law:

> The first concern is that by bringing the action for a declaratory judgment regarding coverage, the insurer effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit. The second concern is that the suit addressing insurance coverage forces the insured to fight a two-front war, thereby expending precious resources fighting both the insurer and the third-party action, which undercuts one of the primary reasons for purchasing liability insurance. The third concern is the real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insurer could be collaterally estopped to contest issues in the latter by the results in the former.

*Id.* (quotation marks, ellipses, and citations omitted).

All three of these concerns are present here. Federal effectively gives "aid and comfort" to Icicle by maintaining this parallel action against Holmes Weddle while the malpractice lawsuit continues. *See id.* As Holmes Weddle argues, Federal has a duty to refrain from "engaging in any action which would demonstrate greater concern for the insurer's monetary interest than for the insured's financial risk." (Mot. to Stay at 12 (quoting *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 169 P.3d 1, 8 (Wash. 2007)).) Holmes Weddle paid a premium to expect that Federal would abide by this obligation, and it prejudices Holmes Weddle to be deprived of this benefit by seeing its

insured providing even indirect and unintentional assistance to Icicle. Along these same lines, Holmes Weddle is being forced to fight a "two-front war," expending "precious resources" litigating this coverage action in federal court while also defending the malpractice action in state court. *See Roberts*, 2013 WL 5230259, at *3. Holmes Weddle must defend this action and the state court malpractice action at the same time, which "inures to Federal's benefit at the law firm's expense." (*See* Mot. to Stay at 12.)

But the third concern discussed in the case law is front and center in this case. There is a real and tangible risk that deciding this case would prejudice Holmes Weddle's malpractice defense. This is because resolving this case on Federal's summary judgment motion would require finding facts that would be of significance to the malpractice action. Indeed, it is improper for a court to proceed with a coverage action if doing so means finding material facts that could interfere with a parallel liability action. *See, e.g.*, *Oregon Mut.*, 2010 WL 2787852, at *4; *Paulson*, 169 P.3d at 10. At this time, there is no way to resolve this case without doing exactly that.

In its prior order, the court identified two possible ways to resolve this case without causing prejudice to Holmes Weddle. (11/14/13 Order at 7.) It is now apparent that neither is viable. The first possibility was to apply the "Related Claims" exclusion to Holmes Weddle's coverage claim. (*Id.* at 7.) The Related Claims exclusion appears to bar coverage if the discovery violations in the original maintenance and cure action were "based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions, or events" as the claims in the malpractice action. (Butera Decl. (Dkt # 27) Ex. C.) In its prior order, the court opined that it may be able to resolve this

issue by examining "the proximity of the relationship between the post-trial sanctions motion and Icicle's legal malpractice claim." (11/14/13 Order at 6-7.) It is now clear that more would be required. In order to resolve this issue, and this case, it would be necessary to determine the extent to which Icicle's malpractice claim was "based upon, arising from, or in consequence of" the discovery violations in the original maintenance and cure action. (*See* MSJ at 12-14.) This would involve a substantial amount of factual overlap with the causation inquiry that will be assigned to the jury in the malpractice action. As the court previously stated, "it would be improper for the court to make findings that any particular conduct by Mr. Sanford or Holmes Weddle caused harm in the Clausen case or caused a malpractice action to be filed" or "to attempt to apportion causation for the malpractice claim between different alleged acts by Mr. Sanford . . . ." (11/14/13 Order at 6.) Since that appears to be necessary to resolve this issue, this avenue is not open to the court.

The second possibility is not viable either. The second possibility the court identified was to apply the "Prior Knowledge and Application Exclusion" to Holmes Weddle's coverage claim. (11/14/13 Order at 7.) That exclusion bars coverage for any claim "based upon [or] arising from . . . any fact, circumstance, situation, transaction, event, or **Wrongful Act** occurring prior to [January 12, 2012,] which, prior to such [] date, any **Insured** knew or should have known might give rise to a claim . . . ." (Butera Decl. Ex. C.) Federal argues that this exclusion applies because Holmes Weddle knew about the conduct underlying the malpractice action well in advance of January 12, 2012. (MSJ at 15-16.) Federal and Holmes Weddle suggest different standards that the court

might apply to determine if this was enough to charge Holmes Weddle with knowledge that Mr. Sanford's conduct "might give rise to a claim." (*Compare* MSJ at 16 (citing *Tewell, Thorpe & Findlay, Inc., P.S. v. Cont'l Cas. Co.*, 825 P.2d 724, 728 (Wash. Ct. App. 1992)) *with* Resp. at 25 (citing *Westport Ins. v. Atchley, Russell, Waldorp & Hlavinka, LLP*, 267 F. Supp. 601, 623 (E.D. Tex. 2003)).) And while these standards differ in some respects, it is clear that under either one, the court's task will include examining the severity of Mr. Sanford's misconduct and assessing the degree to which it bespeaks legal malpractice. This is precisely what the jury will be asked to do in the malpractice action. Thus, this avenue is not open to the court either.

With these two possibilities eliminated, it appears that there is no way to resolve this case without finding facts that would be of consequence in the malpractice action. Accordingly, the danger of prejudice to Holmes Weddle is high, strongly suggesting that a stay is the best course of action.

      3.  <u>Orderly course of justice</u>

The orderly course of justice also counsels in favor of a stay. This factor is measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay. *CMAX*, 300 F.2d at 268. This case would certainly be simplified by a clear determination of liability in the malpractice case accompanied by findings of fact or a special verdict form indicating the harm attributable to each different category of alleged attorney misconduct. Indeed, the court's task on this summary judgment motion would be much easier at that point. And even if this efficiency did not materialize, staying the case will still simplify questions of law and

issues of proof because the court will no longer have to navigate the minefield of possible prejudice it currently finds itself navigating. (*See* 11/14/13 Order.) Finally, it coheres with ordinary notions of common law justice to let the jury find facts first and hear judge-decided issues only after the jury has spoken. *Cf. Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970) (in a bifurcated trial, jury phase must ordinarily precede bench phase); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) (same).

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Holmes Weddle has made out a "clear case of hardship or inequity," *Lockyer*, 398 F.3d at 1112, and GRANTS Holmes Weddle's motion to stay (Dkt. # 17). The court stays all proceedings in this case, suspends all deadlines, and STRIKES Federal's pending motion for summary judgment (Dkt. # 26) without prejudice to re-raising the arguments contained therein after all danger of prejudice has passed.

Dated this 31st day of January, 2014.

JAMES L. ROBART
United States District Judge